UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

STACY TODD JUDD                    )
                                   )
V.                                 )          NO. 2:16-CV-24
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security   )

MEMORANDUM AND ORDER

This matter is before the United States Magistrate Judge, with the consent of the parties and under an order of reference [Doc. 16] pursuant to 28 U.S.C. § 636, for disposition and entry of a final judgment. The plaintiff's application for Disability Insurance Benefits under the Social Security Act was administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of that final decision of the Commissioner. The plaintiff has filed a Motion for Judgment on the pleadings [Doc. 12], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 14].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal*

*Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant

2

numbers of other jobs exist in the national economy which
the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing

disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d

270, 274 (6th Cir. 1997).

The plaintiff alleges that he became disabled as of January 1, 2015. He is, and

was at all times pertinent to this case, a "younger" individual, being 43 years of age on

his alleged disability onset date and 45 years of age at the present time. He has a high

school education. There is no dispute that he cannot return to any past relevant work.

Plaintiff received extensive medical treatment at both the VA Medical Center in

Johnson City, Tennessee, as well as with private physicians. His medical history, his

testimony at his administrative hearing, and the testimony of the vocational expert

["VE"] are adequately described in the Commissioner's brief as follows:

> On June 20, 2014, Dr. Barnes, Plaintiff's treating doctor at Appalachian
> Orthopedics, performed a left shoulder arthroscopy with rotator cuff repair on
> Plaintiff (Tr. 264-67). In December 2014, Dr. Barnes found that Plaintiff could
> lift 40 pounds below shoulder level and sit and walk for a continuous period (Tr.
> 161). Dr. Barnes indicated these restrictions were not permanent, as Plaintiff had
> not yet reached maximum medical improvement (Tr. 161). In the same month, Dr.
> Bookout, another of Plaintiff's physicians, opined that Plaintiff could lift no more
> than 40 pounds below his shoulder level and perform no overhead lifting (Tr. 163-
> 65).
>
> In December 2014 and January 2015, Plaintiff reported to Dr. Barnes that
> he had joint pain but no muscle weakness, back pain, swelling of the
> extremities, or exercise intolerance (Tr. 246, 248). Plaintiff was not completing
> his home exercises for his shoulder which included stretching and range of motion
> exercises (Tr. 245-46, 249).
>
> On January 22, 2015, Dr. Barnes opined that Plaintiff could return to his
> regular work duties in two weeks (Tr. 246). Plaintiff was anxious to return to
> work as a mail handler (Tr. 246). Plaintiff reported that he had joint pain but no
> muscle weakness, back pain, swelling of the extremities, or exercise intolerance
> (Tr. 246). An electromyogram (EMG) was normal and showed no evidence of a

3

right cervical motor neuropathy (Tr. 303).

On March 2, 2015, the Department of Veterans Affairs (VA) determined that Plaintiff was entitled to 60% service-connected disability on January 22, 2014, which would increase to a 100% service-connected disability rating on June 30, 2014, but revert back to 60% service-connected disability on December 1, 2014 (Tr. 135).

In March 2015, Dr. Karbasi, a psychiatrist at the VA Medical Center, noted that Plaintiff was seeking mental health treatment but his primary interest seemed to be increasing his disability rating (Tr. 680). Plaintiff's symptoms had previously been treated with prescribed medication (Tr. 680). Dr. Karbasi reviewed Plaintiff's records and noted that he had not been previously diagnosed with any mental health condition by any mental health professional other than partner relational problems (Tr. 681).Plaintiff also reported that he was filing for Social Security Disability and "they were on his back" to get an evaluation done (Tr. 681).

On March 27, 2015, Plaintiff completed a Function Report (Tr. 187). Plaintiff reported that he provided care for his 4-year old son when his wife was working (Tr. 188). He prepared meals, drove, mowed the lawn, and shopped in stores and by mail (Tr. 189-90). Plaintiff also watched television, read, and attended church (Tr. 191).

In April 2015, Dr. Wells, a specialist at Watauga Orthopedics, saw Plaintiff for left shoulder pain (Tr. 582). Plaintiff reported that he had no muscle aches or weakness, arthralgias, or joint pain (Tr. 583). A magnetic resonance imagining (MRI) scan of Plaintiff's cervical spine revealed a disc protrusion at the C3-C4 level and C7-T1 facet arthrosis with spurring, moderate right foraminal stenosis, and mild impingement exiting the right C5 nerve root (Tr. 584). A lumbar spine MRI revealed a disc bulge at the L2-L3 level, with no impingement, and L5-S1 levels, with anterolisthesis right formainal bulge, but no source for left-sided radiculopathy (Tr. 584). Dr. Wells noted that Plaintiff's lumbar spine showed no evidence of nerve root impingement and he thought that any surgical intervention would not be helpful (Tr. 584). Plaintiff's mood and affect were normal and he was oriented to time, place, and person (Tr. 579).

In the same month, Plaintiff was referred to Dr. Dulebohn at the Mountain Home VA Medical Center for a neurosurgical consultation (Tr. 595). Dr. Dulebohn indicated that Plaintiff had no surgical lesion and no restrictions from neurosurgery and he recommended conservative management of Plaintiff's condition (Tr. 596).

On April 30, 2015, Dr. McGowan performed a compensation and pension (C&P) examination to evaluate Plaintiff's thoracolumbar spinal condition (Tr. 608). Plaintiff reported that his back had been injured from several motor vehicle accidents in the early 1990s (Tr. 610). An MRI scan examination revealed that Plaintiff had mild disc bulging at the L2-L3 level through the L5-S1 levels with no significant central canal or foraminal stenosis (Tr. 627). Plaintiff reported pain when performing exertional activities, but Dr. McGowan noted that the flare-up

4

and functional impact sections of his report were based on Plaintiff's subjective responses (Tr. 615, 617, 629). Dr. McGowan opined that Plaintiff's back condition impacted Plaintiff's ability to work but he did not provide specific functional limitations for Plaintiff (Tr. 627).

On May 1, 2015, Mr. Fenton, a physical therapist, noted that Plaintiff had poor appointment attendance and poor compliance with postoperative recommendations and was not a good candidate for further physical therapy (Tr. 602). Mr. Fenton noted that Plaintiff's goals were essentially financial as he was focused on increasing his disability rating (Tr. 601-02).

In May 2015, treatment notes from Mountain Home VA Medical Center document that Plaintiff had no acute changes or signs of failure of repair of the left shoulder on imaging studies (850). He had good muscle strength and his gait was normal (Tr. 770). Plaintiff was alert and oriented, his thoughts were normal, and his memory, concentration, and judgment were intact (Tr. 770-71).

On May 20, 2015, Dr. Neilson, a state agency psychological consultant, reviewed the evidence of record and found that Plaintiff could perform simple and detailed instructions and sustain concentration and persistence for these tasks during an eight-hour workday (Tr. 59-60). He could adapt to infrequent change and interact with the public, supervisors, and coworkers on a superficial level but worked better with things rather than people (Tr. 59-60). On May 28, 2015, Dr. Parrish, a state agency medical consultant, reviewed the evidence of record and found that Plaintiff could perform above a light level of work activity (Tr. 55-58).

On June 26, 2015, Dr. Wells saw Plaintiff for bilateral shoulder pain (Tr. 691). Plaintiff reported that he had no muscle aches or weakness, arthralgias, or joint pain (Tr. 692). Dr. Wells advised Plaintiff to undergo further physical therapy (Tr. 693).

On June 30, 2015, Dr. McGowan performed a C&P examination of Plaintiff to evaluate his neck (cervical spine), shoulder, and arm conditions (Tr. 694, 720). Plaintiff reported that his injuries occurred from his multiple parachute jumps from helicopters during his time in the service (Tr. 696). An x-ray of Plaintiff's cervical spine revealed facet arthropathy with grade 1 anterolisthesis at the C7 level and degenerative disc disease at the C5-C6 level (Tr. 712). Plaintiff reported pain when performing exertional activities, but Dr. McGowan noted that the flare-up and functional impact sections of his report was based on Plaintiff's subjective responses (Tr. 700, 702, 705, 714, 728, 730, 732, 734-35, 739, 741).

On August 6, 2015, Dr. Bryant, a state agency psychological consultant, reviewed the evidence of record and found that Plaintiff could perform simple and detailed instructions and sustain concentration and persistence for these tasks during an eight-hour workday (Tr. 76-77). He could adapt to infrequent change and interact with the public, supervisors, and coworkers on a superficial level but worked better with things rather than people (Tr. 76-77). On August 7, 2015, Dr. McNeil, a state agency medical consultant, reviewed the evidence of record and found that Plaintiff could perform above a light level of work activity (Tr. 72-75).

On September 25, 2015, Dr. Provance evaluated Plaintiff because he

5

needed a letter for his government disability claim (Tr. 876-77). On examination, Plaintiff had full strength in his upper and lower extremities (Tr. 879). He complained of pain in his back and neck but Plaintiff had full range of motion in his neck and his straight leg raise testing was negative (Tr. 879). Plaintiff could heel and toe walk and had no muscle atrophy (Tr. 879).

In the same month, Plaintiff reported that he had a panic attack and went to the emergency room at the VA Hospital (Tr. 882). Plaintiff reported that he was feeling better when using his psychotropic medication, but his wife wanted him to stop using his medications due to sexual dysfunction (Tr. 882). Plaintiff's mental status examination was generally benign and his concentration, memory, judgment, and insight were intact (Tr. 882-83).

In October 2015, Dr. Provance reported that Plaintiff was not able to perform his work as a mail handler (Tr. 852). Dr. Provance reported that he did not have personal objective medical evidence but provided his opinion after reviewing medical records from Plaintiff's primary care physician who had retired (Tr. 852).

On November 9, 2015, Plaintiff was awarded disability retirement through the Federal Employees Retirement System (FERS) (Tr. 240). The Board found Plaintiff disabled from his work as a mail handler due to lumbosacral spondylolisthesis, cervical anterolisthesis, and cervical radiculopathy (Tr. 240).

On November 25, 2015, Dr. Provance opined that Plaintiff could sit for three hours out of an eight-hour workday, for 15 minutes at a time, and stand for three hours out of an eight-hour workday, for 15 minutes at a time, lift up to 20 pounds on an infrequent basis and up to 10 pounds on an occasional basis, and needed to rest for four hours during the workday (Tr. 942). He could occasionally perform fine manipulation or grasping of small objects, infrequently use his hands for typing or writing, and would not be reliable in attending an eight-hour workday (Tr. 943).

Plaintiff and a vocational expert testified at an administrative hearing on December 7, 2015 (Tr. 27-48). Plaintiff reported that his disability was due mainly to pain in his back (Tr. 35). He also reported that he had shoulder surgery that was not effective, as well as depression and panic attacks (Tr. 38, 40-41). Plaintiff testified that he could lift 5 to 10 pounds and stand for four hours and sit for two hours during a workday (Tr. 36, 38).

Dr. Bentley Hankins, a vocational expert, also testified at Plaintiff's administrative hearing (Tr. 42-43). The ALJ asked the vocational expert a hypothetical question regarding an individual of Plaintiff's age, education, work experience and RFC (Tr. 44). The vocational expert responded that such an individual could perform the jobs of merchandise maker, small products assembler, and mail order clerk, which jobs exist in significant numbers in the national economy (Tr. 44-45).

[Doc. 15, pgs. 2-8].

On December 21, 2015, the ALJ rendered his hearing decision. Following the sequential evaluation process described above, he found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2015 (Tr. 11). At step two of the process, he found that the plaintiff had a combination of impairments that were "severe," meaning that they significantly limited the plaintiff's ability to perform basic work activities as set forth in 20 C.F.R. § 1520(c). These were a shoulder disorder, degenerative changes of the cervical and lumbar spine, obesity, a somatoform disorder, an anxiety disorder, and obsessive compulsive disorder traits (Tr. 11).

At step three, he found that plaintiff did not have an impairment or combination of impairments that met or equaled any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P. Appendix 1. In doing so, the ALJ determined the level of functional impairment caused by his mental impairments in different areas. He found that the plaintiff had mild restrictions in his activities of daily living. The ALJ noted that the plaintiff had described his activities of daily living to include caring for his son when his wife is at work, preparing some meals, mowing, driving, shopping both in store and by mail, watching television, reading and attending church services (Tr. 12). In social functioning, the ALJ found the plaintiff had moderate difficulties, and that he "accounted for such moderate limitations by limiting the claimant to occasional contact with coworkers, supervisors and the public and better with things than people." (Tr. 13). The ALJ then found that the plaintiff had moderate difficulties with concentration, persistence or pace. Because of this, the ALJ limited the plaintiff to simple, unskilled work (Tr. 13).

The ALJ then determined the plaintiff's residual functional capacity ["RFC"], which is the ALJ's assessment of what he finds the plaintiff can do in spite of his impairments. He found that plaintiff could perform light work "except that he is limited to the following: Occasional postural except no ropes, ladders, or scaffolds and no crawling; overhead reaching occasional both upper extremities; avoid concentrated exposure to extreme cold, hazards, and vibrations; limited to simple, unskilled work; occasional contact with coworkers, supervisors, and the public; and better with things than people." (Tr. 13). This was the source of the question he asked the VE at the administrative hearing which led to the identification of jobs the plaintiff could perform with those limitations (Tr. 44-45).

At this point, the ALJ pointed out that he needed to make a credibility determination regarding the veracity of plaintiff's complaints regarding the effect of his conditions on his ability to function. In this regard, he recounted plaintiff's testimony, but announced that he found the plaintiff's statements regarding his functional capabilities to be not entirely credible. To explain this finding, the ALJ described the plaintiff's various conditions and treatment he had received (Tr. 14).

In this regard he first discussed the plaintiff's shoulder disorder. He mentioned the opinion by Dr. Barnes, the plaintiff's orthopedist, on December 11, 2014 that plaintiff would have various limitations described above, which included no overhead use by plaintiff of his arms and no overhead lifting. He noted that Dr. Barnes stated that plaintiff had not reached maximum medical improvement at that time. He then discussed Dr.

8

Bookout's opinion from December 2014, which contained similar restrictions, including the ban on overhead work. However, he noted that Dr. Bookout thought the restrictions were permanent in nature. The ALJ then noted that less than one month later, plaintiff reported to Dr. Barnes that he was anxious to return to work, and that Dr. Barnes opined that the plaintiff should be able to return to work in two weeks. Dr. Barnes said plaintiff need only return as needed. The ALJ then discussed findings from Watauga Orthopedics in April 2015 which indicated that the plaintiff had arthritis in his repaired left shoulder. However, the ALJ noted that imaging studies at the VA in May 2015 showed no acute changes or failure of the surgical repair to the left shoulder. The ALJ noted that the plaintiff had only received conservative care following the shoulder surgery. He then stated that plaintiff's complaints that he was limited with respect to his shoulders beyond the ALJ's RFC finding were not credible (Tr. 14-15).

The ALJ then discussed the plaintiff's problems with his cervical and lumbar spine. He noted the rather benign findings on imaging studies, and the opinion by Watauga Orthopedics that surgical intervention was not necessary. He mentioned that plaintiff's spine treatment was conservative with no emergency room visits or hospitalization for his neck or back. He noted that plaintiff's exams showed he was "able to stand, move about, and use his arms, hands and legs in a satisfactory manner." (Tr. 15-16). The ALJ stated the postural limitations in the RFC finding fully accommodated plaintiff's problems with his neck and lower back (Tr. 16).

After noting that he took plaintiff's obesity into account in his RFC finding, the

9

ALJ discussed Dr. Provance's medical assessment described above. Among other things, that assessment required plaintiff to have "the use of a recliner during a normal workday for four hours in two hour intervals," and stated plaintiff would have a "medical need to be absent" from work for up to eight absences per month (Tr. 16).

He then mentioned the State Agency doctors who had opined as to plaintiff's limitations. These included several postural limitations including no overhead reaching (Tr. 16-17).

Regarding the plaintiff's mental health status, the ALJ noted his treatment at the VA. He mentioned that the records indicated in March 2015 that plaintiff's "interest primarily seemed to be increasing his (VA) disability rating." (Tr. 17). Given the treatment history, the ALJ found the plaintiff was not entirely credible in describing his mental difficulties. He also noted the State Agency psychologists had opined some serious limitations. *Id.* However, the ALJ had incorporated several of them into his RFC finding.

The ALJ then described the weight he gave to the various medical opinions. He gave little weight to the State Agency doctors because they were not backed up with objective clinical findings and were inconsistent with other medical evidence. He gave little weight to Dr. Barnes and Dr. Bookout, finding their opinions were also inconsistent with the other medical evidence. He gave little weight to Dr. Dulebohn that there were no restrictions from neurosurgery because the doctor did not consider the combined effects of the plaintiff's severe impairments. He gave little weight to Dr. Provance

10

because he found his opinion was inconsistent with the other medical evidence. In so doing, the ALJ described his findings in that regard, such as the apparent structural success of the shoulder surgery, the conservative treatment for both the shoulder and the neck and back, and observations during physical exams. He found the State Agency psychologists were entitled to great weight regarding the plaintiff's limitations in social functioning, but little weight to the rest of their opinions (Tr. 17-18).

The ALJ then noted that the plaintiff had been found disabled by the United States Office of Personnel Management ["OPM"], and thus entitled to disability retirement. He pointed out that this was because he could no longer perform his job as a mail handler due to his back and neck problems. The ALJ pointed out that this finding was not binding on the Social Security Administration because different rules and standards were used to determine eligibility for OPM disability retirement than for Social Security disability. He then noted that the VA had found the plaintiff to have a service-connected disability. However, he stated that their ratings of disability were based on diagnosis and treatment, and what the impairment in earning capacity would be for an average person, with no determination on the degree of limitation on work activities, as in the case with Social Security disability. As to both the OPM and VA decisions, he also found that their findings were consistent with the totality of the medical evidence he had before him. Also, he had evidence before him that was not before the VA. The upshot of all of this was that he gave little weight to OPM and VA decisions due to their different approaches to determining disability as a status, and the inconsistency of their decisions with the

11

entire record (Tr. 18-19).

He found at step four that the plaintiff could not, with his RFC, return to any past relevant work. However, at the fifth step, the ALJ found that there were a substantial number of jobs identified by the VE which the plaintiff could perform. Accordingly, he found the plaintiff was not disabled (Tr. 19-20).

Plaintiff first asserts that the ALJ erred "in not properly considering and weighing the award to the plaintiff of 100% disability by the Veterans Administration and the finding of disability by the Federal Employees' Retirement System." [Doc. 13, pg. 13]. He concedes that the findings of the VA and the OPM are based upon different unique rules, and are not binding on the Social Security Administration. He also correctly points out that the Sixth Circuit has not specified what weight the Social Security Administration is required to give to disability findings by other agencies or entities. However, he points to dicta in *Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985) which stated that it was "audacious" for the Commissioner to deny benefits when that plaintiff had been given favorable disability determinations regarding workers' compensation and the "black lung program." He also asserts that the District Court case of *King v. Commissioner of Social Security*, 779 F. Supp.2d 721 (E.D. Mich. 2011) is persuasive. *King* points out that the evidentiary value of such determinations has been mentioned in the Sixth Circuit, and that other circuits require the Commissioner to address them and explain the weight given them, much like the requirements for explaining the weight given to a treating source. Ultimately, the District Court remanded

12

the case on that basis for the ALJ to explain his consideration of a disability determination by the VA in that case.

The Court understands the plaintiff's argument. However, in the present case the ALJ did explain the weight given with sufficient specificity. As stated above, he described the methodology and criteria used by both the VA and the OPM to determine that plaintiff was entitled to disability benefits of disability retirement. He also went a step further and stated that he gave them little evidentiary value because their respective determinations were not supported by the record as whole. With regard to the VA, he pointed out that he had other medical evidence before him that was not available when the decision was made to award the plaintiff a disability rating of 60% which was ultimately raised to 100%. The Court finds that the ALJ complied with the requirements suggested by *King, supra*, and offered an explanation as to his findings relating to those determinations. This means that while the ALJ's analysis will rise or fall based on the process he utilized and the finding he made, he properly considered the findings of those other agencies.

Regarding the evidence which the VA used to determine that the plaintiff was disabled, plaintiff asserts that the ALJ did not mention or analyze the consultative examinations performed for the VA by Dr. McGowan (Tr. 608-644, 694-757). While the ALJ did not discuss Dr. McGowan by name, his reports helped form the basis for the VA to find plaintiff's percentage of disability, and is part and parcel of the VA's yardstick for making such a determination. As previously stated, the ALJ did discuss how that process

13

differs from the one in play in a Social Security disability determination, and Dr. McGowan's reports were interwoven into that process and were of minimal use to the ALJ in his task of determining whether the plaintiff could engage in substantial gainful activity based upon hard evidence. However, Dr. McGowan filed out the lengthy VA form and was basically a conduit for the plaintiff's subjective complaints regarding flare-ups and the functional impact as described by the plaintiff. (Tr. 615, 617, 629, 700, 702, 705, 714, 728, 730, 732, 734-35, 739, and 741). The failure of the ALJ to discuss Dr. McGowan's summarization of plaintiff's complaints in plaintiff's own words is not error. In any event, the ALJ discussed why he rejected the conclusions of the VA which flowed in part directly from Dr. McGowan's reports.

Plaintiff then asserts that the ALJ's decision suffers from a lack of substantial evidence in various respects. First, the plaintiff asserts that the ALJ erred in his evaluation of the opinion of treating physician Dr. Paul T. Provance. In the case of *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011), the Sixth Circuit went into great detail about how ALJ's must evaluate testimony of a treating physician, such as Dr. Provance. In this regard, the Court stated:

> the Commissioner has mandated that the ALJ ''will'' give a treating source's opinion controlling weight if it ''is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'' 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: ''the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.''

14

> *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004) (citing 20 C.F.R.
> § 404.1527(d)(2)).

*Id.* at 937.

However, the Sixth Circuit has also explained that "[t]his court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions received great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464,472 (6th Cir. 2014).

The ALJ did discuss the reasons for giving little weight to Dr. Provance. It is true that the ALJ used the catch-all phrase that Dr. Provance's opinion was "inconsistent with the totality of the medical evidence of record." (Tr. 18). However, the ALJ in fact discussed the medical records in great detail, and reasserted his specific findings as part of his explanation of the weight he gave the opinion of Dr. Provance. In this regard, he stated that imaging studies and physical exam showed "no acute changes seen or failure of repair of the left shoulder…" (Tr. 18). He noted conservative treatment of the plaintiff's shoulder following the alleged disability onset date. He pointed to the conservative treatment regarding the plaintiff's back and neck, and had required no hospitalization or emergency room treatment in this regard. He stated that the evidence showed the plaintiff was able to stand, move about, and use his arms, hands and legs in a satisfactory manner (Tr. 18). There was therefore substantial evidence to support the

ALJ's finding, along with a sufficient explanation as to why he did not give Dr. Provance controlling weight.

Even if a treating source is not accorded controlling weight, *Cole, supra*, and other cases require the treating source's opinion be considered as an acceptable medical source. However, Dr. Provance's opinion was considered by the ALJ under the factors set forth in those cases, and was found entitled to little weight for the same reasons set out in the preceding paragraph.

Also, the Court finds that the ALJ did not run afoul of *Gayheart v. Commissioner of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013). In that case, the Sixth Circuit remanded the matter for reconsideration, finding that the ALJ did not correctly weigh the medical opinions as required by 20 C.F.R. § 404.1527(c). Under the regulations, Social Security Rulings, and case law, the Court stated that "treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.' 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence., *id.* § 404.1527(c)(2)-(6)." *Gayheart*, *supra*, at 376.

The Court noted that the ALJ accorded little weight to the opinion of the plaintiff's long time treating psychiatrist, but instead relied upon consultative examining

psychologists and one who testified at the hearing as a medical expert. While the ALJ found that the opinion of the treating psychiatrist did not meet either prong to be accorded controlling weight, that it be well-supported by medically acceptable techniques and was not inconsistent with the other substantial evidence, the Court found that he did not give adequate reasons for so finding. Also, after his failure to accord the treating psychiatrist controlling weight, the ALJ failed to give adequate reasons for the lack of weight he gave her when comparing her opinions to those of the non-treating sources to which he gave great weight. The Court stated that the ALJ's "failure to provide 'good reasons' for not giving (the treating psychiatrist) controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Id.* at 377. Mainly, the Court complained that "the ALJ does not identify the substantial evidence that is purportedly inconsistent with (the treating psychiatrist's) findings." The Court then stated that "surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources." *Id.* Likewise, the Court found that "the ALJ's focus on isolated pieces of the record is an insufficient basis for giving...little weight" to the treating psychiatrist. These

17

included occasional activities of that plaintiff and clinic note references of the psychiatrist to the plaintiff looking forward to being outside and planning to buy a new lawnmower blade.

This Court does not believe that *Gayheart* is anything more than an accurate description of the requirements of the applicable regulations, and that ALJ's failure to follow them. The ALJ did not rely solely on other doctors, but described evidence in the record which contradicted Dr. Provance's findings, as set out above.

Plaintiff also asserts that the question to the VE was not supported by substantial evidence because it did not include all of the plaintiff's impairments. Plaintiff complains that the hypothetical did not adequately describe the effect of his mental impairment on his ability to work, arguing that merely limiting plaintiff "to jobs requiring no more than simple, routine, unskilled work with occasional contact with co-workers, supervisors and the public, basically better with things than people" (Tr. 44) is in conflict with *Ealy v. Commissioner of Soc. Sec.*, 594 F.3rd 504 (6th Cir. 2010). The fatal flaw in *Ealy,* however, was that the ALJ mischaracterized the actual statement of the psychologist he stated he was relying upon. *Id*. at 516. There is substantial evidence to support the mental limitations in the present RFC as worded. Other district courts in the Sixth Circuit have refused to expand *Ealy* to this degree. *See, Jackson v. Commissioner of Soc. Sec.*, 2011 WL 4943966 (N.D. Ohio. 2011), and *Horsely v. Astrue*, 2013 WL 55637 (S.D. Ohio. 2013).

There is, however, one component of the RFC, and thus of the question to the VE, which lacks substantive support. All of the medical opinions limit the plaintiff in his ability to engage in overhead reaching and lifting. Dr. Barnes and Dr. Bookout both found that the plaintiff could not engage in any overhead reaching (Tr. 161, 163). The State Agency physicians found that the plaintiff could not lift overhead with the left upper extremity, and could only occasionally do so with the right upper extremity (Tr. 56 and 73). The ALJ did not give weight to any of these opinions and found in the RFC that the plaintiff could engage in "overhead reaching occasional both upper extremities." (Tr. 13). There is no medical opinion to support this finding. The Commissioner cites *Rudd v. Comm. of Soc. Sec.*, 531 Fed. Appx. 719 (6th Cir. 2013). In that unpublished opinion, the Court stated that "to require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Rudd,* 531 Fed. App'x at 728, (quoting Social Security Ruling 96-5p).

However, the present situation has nothing to do with the treating physician rule, and everything to do with substantial evidence. Here, there is no physician in this record who supports the ALJ's determination in this particular regard. He disagreed with them all, across the board. The Commissioner cites *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574 (6th Cir. 2009). There, the ALJ found the plaintiff could perform light work,

19

while the treating doctor opined that the plaintiff was limited to sedentary work. The Sixth Circuit sided with the Commissioner, stating that "[a]lthough physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Id*. at 578. However, the Court went on to say the ALJ was within his rights, in spite of the treating physician's opinion, to credit "the opinions of *other physicians* who assessed Nejat as being able to stand and/or walk for six hours of an eight-hour workday…" *Id*. (Emphasis added). Thus, the ALJ as finder of fact is certainly entitled to rely on the medical opinion of one physician over another. He is the one who ultimately determines a person's restrictions. But he cannot substitute his opinion for that of all of the doctors under the circumstances of this case who came to the opposite medical conclusion. *See, Harris v. Heckler, supra*, at 435. Here, absolutely no source opined that the plaintiff could engage in even occasional overhead reaching with his left arm. No test results indicated that he did, or could, do this. Exams revealing muscle strength, etc., would not show anything about overhead reaching. Substantial evidence to support the finding in the RFC that he could is lacking. In this respect, the Commissioner's position is not substantially justified.

The Court does note that Dr. Barnes and Dr. Bookout gave their opinions shortly after the plaintiff's surgery, and Dr. Barnes at least indicated that the plaintiff had not reached maximum improvement. Perhaps a consultative examination, or perhaps updated medical records from treating sources, would show that the plaintiff can now engage in occasional overhead reaching. However, the Court finds that it was error for the ALJ to

20

not include that restriction on the record as it now stands. The case will be remanded for further analysis regarding this issue. To that extent, the plaintiff's Motion for Judgment on the Pleadings [Doc. 12] is GRANTED, and the Motion for Summary Judgment [14] of the defendant Commissioner is respectfully DENIED.

SO ORDERED:

 s/ Clifton L. Corker
United States Magistrate Judge